Good morning, Your Honors and Officers of the Court. For the record, this is Attorney Godwin Aldarondo. On behalf of Plaintiff Appellant Vladimir Perez, in this case, I would like to begin citing the Court's opinion because this rams the decision by the Court. The Court says that, here it is, on page 4 and 5, sorry about this, that defendants Acevedo Psycho-Harassment Act could not be offensive to the plaintiff because he had engaged in similar acts with co-employees. This is the first time that I have a ruling where the Court says that the relationship between the plaintiff and third parties gave reason to the harasser to believe that her approaches were welcome by the victim. This is against the Supreme Court decision in Meritor v. Savings Bank and other decisions from other circuits. The Court also states that plaintiff was discharged because he violated the code of business conduct by rubbing his genitals on other employees, using foul language, engaging in horseplay, and so on. The Court then says the myriad of these violations violate general and professional norms and unquestionably merits termination. Then we have two issues. First, it is an error to say that because the victim had a prior sexual life, that is an authorization for someone else to conduct sexual harassment. Where do you get the sexual harassment? Put to one side what he did. I am having trouble finding in your record what you are relying on. Within 300 days prior to the EEOC charge, the only thing I could find in your brief that you mentioned was that she insisted that he get some cornbread from a particular store and deliver it to her personally. He refused to do that and would send one of his other employees on a weekly basis with some cornbread to her. Yes. So how is that sexual harassment? Okay. It has to be linked with prior acts. And then this takes me to a second error of the Court, finding that the prior sexual harassment actions by this lady, which the Court said were sexual harassment, but erroneously say that they were discrete acts and therefore they were time bar and the Court disregards these events. Okay. So if you go back in time, you have to go back a full year before there is anything else and that is the hand-holding. Go in there, Judge. Go in there. So how do you, I think the law says we have to find some nexus between something within the statute of limitations. How do you link up the hand-holding to the cornbread? Go in there. The last event was December 2009 where the defendant invited plaintiffs to go to her office and that's called the Chell incident in which she throws Chells on her desk and makes a speech or reading to him. So let's assume that that would be some sexual aspect because she grabbed his arms and rubbed his arms. All right. And then he said, No, and I'm bleeding. And that was it. So she did it again. The following actions were her request to him to bring to her office these pastries. A year later. Personally. A year later. Excuse me? A year later. No, no. Months later. Okay. It was during 2010. That's why I mentioned December 2009 and then 2010 are these requests or invitations to go to her office. And he said during the deposition, after the Chell incident, I did not want to be alone with her. The court says, how is this different from requesting coffee? It's completely different. First, this lady was far away, miles away from the workplace of the plaintiff. Second, it was requesting him to be in the place where he could be sexually harassed. Okay. So you've pointed out it's just a month from the December handholding to the first cornbread request. But then how do you deal with the fact that he refuses to come and bring the cornbread? And nothing happens based on that until how long? Months later. So when? Exact date, I don't recall, but it was about maybe April, March. I don't recall. But that relates because he's rejecting her advances. During those requests, she tells him, you never know when you're going to need a friend. I have Mr. Bancroft in my pocket. He does what I want. So he felt it was a personal request to be alone with her. He rejected. And then out of nowhere comes an investigation about the photo. The opinion contradicts itself. At one point, the opinion says there was no complaint about the photo. And then it says because of a complaint, he was discharged. There was no complaint. The photo was three years old. It was a private photo. It was taken by someone unknown from the telephone of the third party, Mr. Ortega. And it is in question whether the photo belongs to my client or to Mr. Ortega, because there are two witnesses saying Ortega told me this was his photo. So there was no complaint. It was remote, and someone else had claimed that the photo was his. Why? What business need the employer had to take any disciplinary action against my client? What was the motive of the investigation? The suggestion on the other side is that the chronology that happens is the cornbread requests go on. He refuses to comply. He sends them. She still takes it from the other employee. And that goes on for months. And then her son gets fired or some employee resigns. Or resigns. I don't know. And that he is the one who brings forward the photo. Yes. Is that how we should review the record? Yes. The son of this lady was an employee of the company. I don't know if when he showed the photo to her, he was already out of the company. And she requested to her son, send me the photo through an anonymous e-mail. And she takes this to Mr. Bankership. He asked the port manager to conduct an investigation. He did. He said to Mr. Bankership, I found no grounds for this. This is an old picture. And it's hard to determine whose the picture belongs to. That's on the record. And weeks later, this defendant again says, no, I'm reopening the investigation. She tampers with the interviews. She changes the testimony. She fails to tell Mr. Bankership of the prior highly sexual work environment at the docks. And my client gets fired. No one else was disciplined. And my problem is that the court several times says that plaintiff was discharged because of this sexual behavior in the docks. But that was not the reason provided by the employer to terminate my client. The reason was the photo. So the judge took upon himself to amend the employer's reasons. Under state law, there's no reason to discharge this employee. Under federal law, if the judge had considered the prior act, which the judge says clearly were sexual harassment, as part of a continuing violation, then the request for cornbread and quesitos, which is puff pastry, cream cheese, pastries, would make sense. It is not itself the request. It's bring it yourself to my office. Leave the docks, come to Metro Office Park, and bring me that. She had other employees to whom to request coffee and donuts. Why my client only? So it is our position that the judge misinterpreted the facts and the law. It even went on to conclude that state law claims should also be discharged making reference to the prior highly sexual work environment at the docks, which by the general manager had ended. That conduct had ended three years before because they knew about it and they gave training to employees and requested them not to do this. It is unreasonable for the court to conclude that because my client engaged in this type of jokes and pranks with his fellow employees and coworkers, that this lady had reasons to believe that she could harass him and request him to go to her house and stay with her. That's incredible. That's against the Supreme Court decisions and technical decisions. The conduct of a victim outside of the workplace or with someone else is irrelevant as to whether or not this lady's sexual approaches were welcome by my client. They were not. It was rejected several times and she continued insisting on come to my office. I want to see you. We rest in our brief. Thank you. Thank you. Mr. George, good morning. Good morning, Your Honors. My name is Carlos George. I represent the defendants. If it pleases the court, this case, the defendants agreed completely with the determination of the district court. This case is of sexual harassment claims and plaintiff presented through three theories. One regarding, we broke up, one regarding hostile work environment and as general sex discrimination claim. He also had an additional claim, similar claims, on the local law, which is basically follow the same rules of the federal law, and have a wrongful termination act claim. That's the loyalty, a local statute for wrongful termination. This case relates to, and his claim for sexual harassment relates to only four incidents. In 2006, 2007, the invitations to events. In 2007, the key incident that he was asking for the key. At 2009 incident, that is the situation with the reading of the shells. And then in 2010, the issue related to the cornbread. Nothing happened in 2008. Nothing happened in great part of 2009. So these are the situations that are presented in the complaint as the reasons that he claims that he was sexually harassed. The court correctly determines that these are discreet acts. These cannot be taken as a part, and each one of them starts a new statute of limitation. What was the specific reason why he was fired? He was fired after an investigation for violation of code of business conducts, the investigation revealed, and support by two witnesses that he exposed himself at the work area, in addition to other comments, to sexual comments. Is that the photograph, what you call exposed in the photograph, or was it something else? No, he exposed himself. The photograph is evidence of the exposure. But the situation that he exposed his genitals in the area, in the work area, was additional conducts of sexual contents. That was part of the investigation. That was part of the report that was presented to Mr. Blankenship, which reviewed the evidence that was presented during the investigation, discussed that with the committee of the company, and made a decision that he had violated the code of business conduct, and the letter that was presented to him states that the reason was for violation of the code of business conduct. Did he dispute that? Excuse me? Did he dispute the fact? He disputed the facts that he showed himself, but he admitted that he participated in other types of conduct of sexual content, like, for example, grabbing the genitals of his supervisor, robbing his genitals with the body of other employees, making jokes of sexual content, watching pornographic videos at the work area. So other conduct he admitted through the whole process. He denies that the photograph or the person in the photo and exposure was him, and that's something that had been discussed. But there are two witnesses that corroborate that fact during the investigation. That doesn't help you because that involves credibility, and you can't do that in a summary judgment. Yeah, but for purpose of a discrimination case where there's an investigation, a bona fide investigation, where there's evidence to make a determination that definitely it will not be discriminatory, it will not be in violation of Title VII, it will not be in violation of any other federal claims that he has presented before the district court. Okay. What do you say about the quid pro quo claim? As I understand it, what I'm hearing from the other side is these weren't requests for cornbread. They were requests for his personal presence back in her office where she sexually rubbed his arms before. He refuses that request that he appear in her office, and she then falsifies or gins up claims against him and provides false information to Blankenship that leads to his termination. That's what I understand the claim is. Why isn't that enough to get beyond summary judgment? First of all, and this is a specific citation in the district court opinion and order, the request was basically to bring cornbread through a union employee. And the district court cited specifically in page 13 of the opinion and order that she also requested me especially to send a union member employee, during working hours to fulfill her request. So are you saying he didn't testify, that she requested that he personally bring them rather than the only evidence? This is the plaintiff saying. And that's the determination that the court took in order to analyze the quid pro quo and the allegation. Aside from that, plaintiff also admitted that this issue related to bringing cornbread, there was no sexual motivation behind that. He admitted he was asking for deposition, and he admitted that that was not an invitation for any sexual purposes. And that is in docket 29.14.15. And also, he admitted during the whole process that, excuse me, and the reason for termination is clear. It's an investigation which discovered some wrongful conduct from the plaintiff in terms of sexual contents, and that was believed to be correct. And based on that investigation, he was terminated. In addition, also, and as part of the termination, and that was also part and discussed during the termination process, the plaintiff's disciplinary measures before that time were also taken into consideration. And as a matter of fact, there were several disciplinary actions and suspensions around 1998 to 2007. And that was also discussed, and it's in the records that it was part of the disciplinary process. Our position with respect to the health care work environment was not severe and pervasive, and that's a matter of law. And the discussion is in our brief. And with respect, the other section that was discussed is whether it was subjectively discomfort. And under that analysis is where the court then analyzed his conduct and how he manifests sexual comments, sexual actions, that he cannot himself be substantially discomfort with some adverse or some sexual harassment. If you compare what the allegations against Acevedo were with the admissions of what the plaintiff did, they are very different. One very sexually, the other simply did a request to bring some cornbread. That's the only fact that is within the statute of limitations. As to gender discrimination claims, there's no evidence presented by the plaintiff. Local claims should be dismissed and appropriately dismissed under the same standard. Under low 80 claims, based on all this, the just cost standard is complete. The employer could establish the just cost with all the facts that are before the court. That's basically our position. This is our brief, and we rest. Could you? I've gone back to page 13 of the opinion. I don't see, I see the district court saying that plaintiff complains that Acevedo asked him, him, to bring her hot cornbread approximately once a week. At the end, there's a citation. Plaintiff wrote, during my last year with the company, Mrs. Acevedo called me. And it continues. And at the end, she also requested me especially to send union members employee, Eleuterio Lopez, during working hours to fulfill her request. So you're referring not to what the judge interpreted, but as? What the plaintiff, what the plaintiff wrote. I understood that with respect to the issue of whether he can be heard to complain when he himself engaged in horseplay, that the argument on the other side was that that was quite a distance in time that that took place, and it was conduct that was remedied, and so it's really not a fair comparison. Is my understanding of the argument correct, and what do you say about it? The argument basically, with respect to what happened before, is with respect to when that photo was taken. It's not the argument. It's not what relates to other actions or exposures. Basically, when that photo was taken, the position of the plaintiff, it was taken around two or three years before when it was terminated. And as I mentioned, the issue of the photo is an issue of a piece of evidence in order to establish a conduct. The conduct that was demonstrated in the investigation through two witnesses that specifically testified to that, and in addition to other employees that collaborated or basically heard about that, that he exposed himself at the work premises. And that type of action is totally not acceptable at the company, as it's totally contrary to the company policies that plaintiffs knew, took seminars about that, and still did that type of conduct. Any other questions? Thank you.